**J.P., Appellee**

v.

**S.P., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 4, 2010.

Filed March 16, 2010.

Benjamin E. Orsatti, Pittsburgh, for appellant.

Bradley G. Olson, Jr., Ellwood City, for appellee.

BEFORE: BENDER, PANELLA and KELLY, JJ.

OPINION BY BENDER, J.:

¶ 1 S.P. ("Mother") appeals from the trial court's order dated June 24, 2009, and entered on June 25, 2009, wherein the trial court granted the parties shared legal custody of their three daughters and awarded J.P. ("Father") primary physical custody of the children. We affirm.

¶ 2 The trial court succinctly summarized the underlying facts and procedural history of this custody dispute.

The parties first met in 2000, while living in New Castle, Pennsylvania. After the birth of the first child [on August 25, 2001], [Mother] enlisted in the Unites States Army in August of 2002[.] [S]he received her basic training commencing January of 2003, at Fort Leonard Wood[,] and [she] has been stationed after basic training at Fort Steward, Hinesville, Georgia.

[Mother] was deployed to Iraq from May of 2007, through July of 2008, as part of the surge build-up.

. . . .

Prior to [Mother's] deployment to Iraq, the parties lived together in a rental home in Hinesville, Georgia.

. . . .

When [Mother] became aware of her pending deployment, the original arrangement with [Father] was that [paternal grandmother] would move to Georgia to help with the girls. Then, in March of 2007, [Father] decided to move back to New Castle, Pennsylvania, as his mother did not want to move to Georgia. The plan was that [Father] would move to his aunt's house, two (2) doors away from his mother's house.

In October of 2007, [Mother] had 18 days [leave] from her deployment in

Iraq. During this time, [Father] became aware of [Mother's] relationship with Sgt. James Harder, which ultimately became a source of friction, as Mr. Harder became more deeply involved with [Mother]. At that time, [Mother] denied having an affair with Sgt. Harder, notwithstanding receiving numerous phone calls and text messages during her 18 day [leave].

When [Mother] returned to Iraq early in November of 2007, she left with the understanding that they would be working on their marriage. Things deteriorated and in April, 2008, [Father] informed [Mother] via e-mail that he wanted a divorce[,] that he wanted to settle the issue, [and] that he wanted custody of the three (3) girls.

Trial Court Opinion ("T.C.O."), 6/25/09, at 1–4.

¶ 3 On July 18, 2008, Father filed a custody complaint, and he obtained an *ex parte* order on August 12, 2008, granting him primary physical custody of the children until October 21, 2008, and prohibiting either party from removing the children from the trial court's jurisdiction. On November 4, 2008, the trial court entered an interim custody order awarding Father temporary primary physical custody of the children pending the final custody determination. The trial court also ordered the parties to submit to custody evaluations, home studies, and drug and alcohol evaluations. The custody trial occurred on February 6, April 15, and April 16, 2009.

¶ 4 On June 25, 2009, the trial court entered a final order awarding the parties shared legal custody of the children, granting Father primary physical custody, and outlining Mother's periods of physical custody. On July 21, 2009, Mother filed a timely notice of appeal. On July 22, 2009, the trial court entered an ordered directing Mother to file a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Mother filed her Rule 1925(b) statement on August 13, 2009, one day beyond the court ordered twenty-one day period.[1] Mother's Rule 1925(b) statement raised twenty allegations of trial court error, which she reiterated on appeal. *See* Mother's brief, at 6–7.

 ¶ 5 In reviewing a custody order, our scope and standard of review are well established.

[O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

---

1. Although Mother mailed her Rule 1925(b) statement on August 11, 2009, the trial court did not receive it until August 13, 2009. Herein, the operative date to determine timeliness was the date the trial court **received** Mother's Rule 1925(b) statement and not the date it was mailed. *See* Pa.R.C.P. 205.1 (although legal papers may be mailed to prothonotary for filing, "[a] paper sent by mail shall not be deemed filed until received by the appropriate officer.").

*Collins v. Collins,* 897 A.2d 466, 471 (Pa.Super.2006), *appeal denied,* 588 Pa. 762, 903 A.2d 1232 (2006) (internal citations and quotations marks omitted). The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well being. *Saintz v. Rinker,* 902 A.2d 509, 512 (Pa.Super.2006), *citing Arnold v. Arnold,* 847 A.2d 674, 677 (Pa.Super.2004).

■ ¶ 6 As we previously explained, "[t]here is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case by case basis." *Baldwin v. Baldwin,* 710 A.2d 610, 614 (Pa.Super.1998). Furthermore, "when a custody case includes a request by one of the parents to relocate with the child, then the best interest analysis must incorporate the three factors originally summarized in *Gruber* [*v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990).]" *Klos v. Klos,* 934 A.2d 724, 728 (Pa.Super.2007). Those factors consider:

(1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) the integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; [and]

(3) the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.* (quoting *Collins,* 897 A.2d at 471).

¶ 7 At the outset, we note that Mother failed to comply with two aspects of Pa. R.A.P. 1925. First, Mother failed to file a concise statement of errors complained of on appeal concurrently with her notice of appeal. Pursuant to the newly-enacted Pa.R.A.P. 1925(a)(2)(i), governing children's fast track appeals, appellants are required to file a Rule 1925(b) statement with the notice of appeal and serve it upon the trial court in compliance with Pa. R.A.P. 1925(b)(1).

¶ 8 In *In re K.T.E.L.,* 983 A.2d 745 (Pa.Super.2009), this Court addressed a similar issue and declined to extend the bright-line waiver rule the Supreme Court adopted in *Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775 (2005), to deem the appellant's issues waived in a children's fast track case for failing to comply with the amended rule strictly. Specifically, we held,

the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal pursuant to rules 905(a)(2) and 1925(a)(2), will result in a defective notice of appeal. The disposition of the defective notice of appeal will then be decided on a case by case basis under the guidelines set forth in *Stout v. Universal Underwriters Ins. Co.,* [491 Pa. 601] 421 A.2d 1047, 1049 (1980).

*K.T.E.L.,* 983 A.2d at 747. In reaching this decision, we distinguished between a court-ordered Rule 1925(b) statement and one mandated by a procedural rule. Essentially, we reasoned that by failing to file the Rule 1925(b) statement concurrently with the notice of appeal, the appellant violated our rules of appellate procedure and not a trial court order as in *Castillo. Id.* at 747 n. 1. Accordingly, we concluded that a bright-line application of the waiver rule was not warranted in that case for violating the procedure outlined in Pa. R.A.P. 1925(a)(2)(i).

■ ¶ 9 Herein, Mother failed to file the Rule 1925(b) statement concurrent with her notice of appeal. However, mindful of our holding in *K.T.E.L.*, we decline to find Mother's issues waived merely for violating the procedural rules outlined in Pa. R.A.P. 1925(a)(2)(i). Nevertheless, as noted *supra*, Mother not only failed to comply with Pa.R.A.P. 1925(a)(2)(i), but she also failed to comply with the trial court's order to file a Rule 1925(b) statement within twenty-one days of the date of the order. Unlike the reasoning underlying our rationale in *K.T.E.L.*, relating to violations of procedural rules, an appellant's failure to comply with an **order** to file a Rule 1925(b) statement in a timely manner constitutes waiver of all objections to the order, ruling, or other matter complained of on appeal. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998); *Castillo, supra.* This waiver rule applies to family law cases. *In re L.M.,* 923 A.2d 505, 509 (Pa.Super.2007).

¶ 10 In civil cases, Rule 1925(b) implicates the notice procedure set forth in Pa.R.C.P. 236, which involves the following steps: (1) the court must order the Rule 1925(b) statement; (2) the order must be filed with the prothonotary; (3) upon receipt of an order from a judge, the prothonotary must immediately docket the order and record in the docket the date it was made; and (4) the prothonotary must furnish a copy of the order to each party or attorney and must record in the docket the giving of the notice. *See* Pa. R.C.P. 236; *Forest Highlands Community Ass'n v. Hammer,* 879 A.2d 223, 227 (Pa.Super.2005). If any one of these procedural steps is missing, the appellant's failure to comply with Rule 1925(b) will not result in waiver of the issues raised. *Id.*

¶ 11 Herein, the certified docket reveals that the trial court's Rule 1925(b) order was filed with the prothonotary on July 22,

2009. On the same day, the prothonotary entered the order on the docket and recorded the date it was issued. Likewise, the prothonotary recorded the date it served the Rule 1925(b) order upon Mother's counsel. As the notice procedure was strictly followed in this case, Mother's issues are waived pursuant *Lord* and its progeny.

■ ¶ 12 Even if Mother had filed a timely Rule 1925(b) statement, she would not have been entitled to relief. We have carefully reviewed the parties' briefs and the applicable law in this matter, and we conclude that the trial court did not commit an abuse of discretion in its decision to award Father primary physical custody of the three children. Mother is simply seeking for this Court to render factual determinations different from those made by the trial court, and to make different credibility and weight decisions.

¶ 13 The trial court opinion indicates that it properly considered the best interests of the children, including the above referenced *Gruber* factors, in reaching its decision. Moreover, we find its decision ably supported by the record. The record reflects that Father has taken care of the children capably since Mother was deployed to Iraq in May of 2007. The trial court was reasonable in concluding that maintaining Father's role as primary custodian would be in the children's best interest. Moreover, as pointed out in the trial court's opinion, licensed psychologist, Kirk Lunner, recommended that primary physical custody remain with Father. *See* T.C.O., 6/25/09, at 10. Thus, even if Mother had preserved her litany of complaints for appellate review, which she did not, relief would not have been due.

¶ 14 Order affirmed.