J-S01043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| T.M.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.E.G. | |
| Appellee | No. 1458 WDA 2014 |

Appeal from the Order August 6, 2014
In the Court of Common Pleas of Erie County
Civil Division at No(s): 14853-2009

BEFORE: GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED JANUARY 21, 2015**

Appellant, T.M.G. ("Mother"), appeals from the order entered in the Erie County Court of Common Pleas, which granted Appellee, J.E.G. ("Father"), partial physical custody of their minor children, T.G. and R.G. ("Children"), three weekends per month, plus one day per week. We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.[1]

_____

[1] Mother did not file a concise statement of errors contemporaneously with her notice of appeal per Pa.R.A.P. 1925(a)(2)(i). Nevertheless, on September 4, 2014, Mother filed an amended notice of appeal to include a Rule 1925 concise statement, which she supplemented on September 18, 2014. Furthermore, the trial court addressed Mother's claims. Therefore, we will address Mother's issues. *See J.P. v. S.P.*, 991 A.2d 904 (Pa.Super.
*(Footnote Continued Next Page)*

Mother raises the following issue for our review:

> DID NOT THE TRIAL COURT [ERR] IN AWARDING ADDITIONAL PARTIAL CUSTODY TO FATHER IN THAT THE COURT DID NOT PROPERLY CONSIDER THE CUSTODY BEST INTEREST FACTORS SET FORTH IN 23 PA.C.S. SECTION 5328(A) SPECIFICALLY: (1) WHICH PARTY [IS] MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN CHILD AND ANOTHER PARTY[;] (3) THE PARENTAL DUTIES PERFORMED BY EACH PARTY ON BEHALF OF CHILD[;] (4) THE NEED FOR STABILITY AND CONTINUITY IN CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY LIFE[;] (7) THE WELL-REASONED PREFERENCE OF CHILD, BASED ON CHILD'S MATURITY AND JUDGMENT[;] (9) WHICH PARTY IS MORE LIKELY TO MAINTAIN A LOVING, STABLE, CONSISTENT AND NURTURING RELATIONSHIP WITH CHILD ADEQUATE FOR CHILD'S EMOTIONAL NEEDS[;] (10) WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL AND SPECIAL NEEDS OF CHILD[;] (13) THE LEVEL OF CONFLICT BETWEEN THE PARTIES AND ABILITY OF THE PARTIES TO COOPERATE WITH ONE ANOTHER[;] [AND] (16) FATHER'S REFUSAL TO PARTICIPATE IN COUNSELING?

(Mother's Brief at 5).

When examining a challenge to a custody order, our scope and standard of review is as follows:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record,

*(Footnote Continued)* ───────────────

2010) (explaining failure to file concise statement with notice of appeal in children's fast track case constitutes defective notice of appeal; declining to find waiver of issues for technical violation of procedural rules outlined in Rule 1925(a)(2)(i) where appellant failed to file Rule 1925 statement concurrently with notice of appeal but subsequently filed concise statement pursuant to trial court's order).

as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**J.P. v. S.P.**, 991 A.2d 904, 906 (Pa.Super. 2010) (quoting **Collins v. Collins**, 897 A.2d 466, 471 (Pa.Super. 2006), *appeal denied*, 588 Pa. 762, 903 A.2d 1232 (2006)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Elizabeth K. Kelly, we conclude Mother's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed September 18, 2014, at 4-10) (finding: each party respects other's role in Children's lives and is likely to encourage continuing contact with other; Mother and Father have each performed basic parental duties on fairly equal basis since parties' separation in 2007; Mother has assumed bulk of responsibility for needs above Children's basic necessities, including scheduling and attending parent/teacher conferences and medical appointments, and providing transportation to and from extracurricular activities; parties reside approximately four miles apart, which promotes stability and continuity in community, and insures

maintenance of education regardless of custody schedule; Children have become accustomed to equally shared custody schedule since parties' separation; there is value in maintaining equal exposure to each party's diverse household; Father's household provides traditional family unit for Children, who have extended family in Father's household; there is no evidence that either party attempts to turn Children against other party; both parties are invested in maintaining stable and consistent relationship with Children; Father and Mother have begun co-parenting counseling; both parties have attended to Children's daily needs since separation; Mother displays high degree of support in Children's interests, including attending Children's events, working at concession stands, and coaching R.G.'s soccer team; proximity of parties' residences allows for flexibility in crafting custody arrangement, which will permit Children to foster strong relationship with both parties; Father changed his work schedule to reduce his work on weekends; parties' ability to work together with regard to changes in custody schedule demonstrates parties' ability to cooperate for best interests of Children; it is in Children's best interest to spend more time with Mother during week because she is Children's primary source of support for homework and extracurricular activities; it is important to keep Father involved in Children's lives, especially now that Father's new work schedule allows him greater involvement with Children; given this analysis, court modified prior **equal** custody arrangement to increase Father's weekend

time with Children and increase Mother's weekday time with Children). The record supports the trial court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2015

T. M. G.

              **Plaintiff**

      **vs.**

J. E. G.

              **Defendant**

**IN THE COURT OF COMMON PLEAS OF ERIE COUNTY PENNSYLVANIA**

**NO. 14853-2009**

2014 SEP 18 AM 11:32
CLERK OF RECORDS PROTHONOTARY
COMMON PLEAS COURT
ERIE, PA

## OPINION

**September 18, 2014:** This custody matter is before the Court on T. M. G.'s (hereinafter "Mother") Notice of Appeal. Mother appeals this Court's August 6, 2014 Order regarding custody of T. G., born May 2001 and R. G., born November 2002 (hereinafter "Children").

## PROCEDURAL HISTORY

Prior to commencement of the present proceedings, Mother and J. E. G. (hereinafter "Father") equally shared custody of the Children pursuant to a December 3, 2009 Order of Court.

On November 13, 2013, Mother filed a Petition for Custody Modification requesting primary physical custody of the Children. Following a custody conciliation conference, the Court entered a December 18, 2013 recommended Order of Court maintaining equal shared custody of the Children. The Order further scheduled a May 21, 2014 conciliation conference.

Following the May 21, 2014 conciliation conference, at which Father failed to appear, the Court entered a May 21, 2014 recommended Order of Court which reduced Father's custody to one overnight each week and every other weekend. Father, on May 30, 2014, filed a Request for Adversarial Hearing. This Court, following an August 6, 2014 Custody Trial, issued its order of

the same date granting Mother primary physical custody of the Children during the week while Father received custody for one overnight during the week plus three out of four weekends.

On September 2, 2014, Mother filed her Notice of Appeal from this Court's August 6, 2014 Order. Mother, on September 4, 2014, filed her Statement of Errors Raised on Appeal Pursuant to Pa.R.C.P. 905(a)(2) and PA Rules of Appellate Procedure 1925(a)(2)(i) (hereinafter "Statement of Errors"). Mother's sole allegation of error is that the Court erred in granting Father an additional weekend per month. In support of her allegation, Mother alleges that the testimony established that the Children complain about going to their Father's, the Children are more relaxed and happy with less time at their Father's, Father does not schedule or attend the Children's medical appointments, Father does not attend the Children's sporting events, Mother provides the majority of the Children's transportation to extracurricular activities, Father rarely attends parent/teacher conferences, Father does not allow the Children to have friends over to visit, the Children complain that Father and his spouse argue, and Father admitted at counselling that he has not been an involved father.

For the reasons set forth below, Mother's allegation of error is without merit.

## DISCUSSION

### A. **Best Interests of the Child**

A court may modify a custody order if it is in the best interests of the child. *See* 23 Pa.C.S.A. 5338(a). When ordering any form of custody, the best interest of the child is determined by considering all relevant factors, with weighted consideration given to factors which affect the child's safety, including:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

2

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

3

23 Pa.C.S.A. 5328(a).

Certain factors were not implicated in this case and, therefore, are not addressed herein. Specifically, there was no evidence to indicate that there is a risk of harm to the Children or a party with regard to abuse by a party or member of the party's household or that there has been any involvement with protective services. Moreover, there is no indication of a history of drug or alcohol abuse by a party or household member or that the mental or physical condition of a party or household member is an issue in this case. The remaining factors detailed in Section 5328 are addressed as follows:

1. **More Likely Party to Encourage Continuing Contact**

There is no indication that one party is more likely than the other to encourage and permit frequent and continuing contact between the Children and the other party. To the contrary, it is clear that each party respects the other's role in the Children's lives. For example, Father credibly testified that he respects Mother's time with the Children and that he does not wish to infringe on the same. Similarly, Mother credibly testified that she was happy to hear that Father wishes to become more involved in the Children's lives. In this regard, it is apparent that each party is likely to encourage continuing contact with the other.

2. **Parental Duties Performed by Each Party on Behalf of the Children**

Ever since the parties' 2007 separation, Mother and Father have equally shared custody of the Children. In that respect, they each performed basic parental duties on a fairly equal basis. It is clear, however, that Mother has assumed the bulk of the responsibility for needs above the Children's basic necessities. Specifically, Mother is the party to schedule and attend parent/teacher conferences and medical appointments. Mother is also the parent who provides the majority of the Children's transportation to and from extracurricular activities. Father does

4

not attend the Children's parent/teacher conferences or their medical appointments. Moreover, he has only attended the Children's sporting events on a very limited basis.

Accordingly, Mother is more active than Father in performing parental duties in excess of the basic daily needs. Nevertheless, it is noteworthy that Father's involvement in some of these duties was formerly impeded by his prior work commitments.

### 3. **Need for Stability and Continuity**

The parties reside within the same community and their residences are only approximately four miles apart. In that regard, stability and continuity in community and education will be maintained, regardless of the custody schedule. The Children have, however, been accustomed to an equal shared custody arrangement for the seven years since the parties' separation. In that regard, granting Mother primary physical custody disrupts the Children's family life. While Mother's testimony indicates that the Children adjusted well to schedule change following implementation of the May 21, 2014 recommended Order, the Court finds value in maintaining fairly equal exposure to each of the parties' diverse households.

Father is remarried and has three step-daughters ages 16, 11 and 10. Father's wife assists with transportation for the Children and performing other household needs such as dinner time with the family. There are times when the children within the family unit have arguments that ultimately engage both Father and his wife. Father's credible testimony indicates, however, that they are nothing more than typical disagreements occurring within a larger family unit. While the Children may be uncomfortable when such arguments occur, as Father points out, they inevitably occur in such a larger family unit with multiple children. Father's household provides a very traditional family unit for the Children and functioning within such a unit is important to the Children's development.

5

In Mother's household, on the other hand, it is generally just Mother and the Children and, occasionally, one of Mother's partners. There is certainly value to the Children in being the center of Mother's universe. Considering that Mother has, however, brought multiple partners into the Children's lives in a fairly short period of time, and adopted an alternative lifestyle (which Father does not criticize), there is also value to the Children seeing what it is like to function in a more stable family unit.

In that regard, it is apparent that the Children are capable of successfully adjusting to schedule change, however, equal expose to each household is valuable.

## 4. Availability of Extended Family

As discussed in Section A.3. above, the Children have extended family in Father's household. Other than partners who have come and gone over the past few years, there was no evidence to indicate the availability of extended family when the Children are in Mother's care. To the contrary, it appears as though Mother relies on various friends who provide her support network with regard to the Children; those friends are not a constant in the Children's lives and are often strangers to Father until after they begin playing a role in the Children's lives

## 5. Sibling Relationships

The relevance of the Children's step-siblings is discussed in Section A.4. above. Otherwise, the Children do not have any other siblings.

## 6. Preference of the Children

The Children were not present at the Custody Trial. Nevertheless, Mother expressed her observation that the Children seem happier and more willing to go to Father's house now that they spend less time in his custody.

7. **Attempts of Parent to turn the Children Against the Other Parent**

There was no evidence to indicate that either party attempts to turn the Children against the other party. To the contrary, as discussed in Section A.1 above, it is apparent that each parent respects the Children's relationship with the other.

8. **More Likely Party to Maintain Loving, Stable, Consistent and Nurturing Relationship Adequate for Children's Emotional Needs**

The parties have equally shared time with the Children ever since their separation seven years ago. Considering the length of this shared arrangement, it is apparent that both parties are invested in maintaining a stable and consistent relationship with the Children.

Nevertheless, it is also apparent that Father has allowed discord with Mother to impede his relationship with the Children in a way that appears likely to compromise the Children's emotional needs. Specifically, Father, frustrated with Mother's control over the Children's extracurricular activities, opted not to attend all but a limited number of those activities just to spite mom. In addition, he placed primary responsibility for transportation to those activities on mother, even when the Children were in his custody. Father credibly testified that he now understands that his reaction was wrong and that he intends to be more actively involved in the Children's lives. Moreover, he and Mother have recently begun co-parent counseling. While the Court believes that Father is working toward remedying the impact of his inappropriate response, it is clear that his behavior worked to the detriment of his relationship with the Children as shown by their reluctance to spend time in Father's home.

9. **More Likely Party to Attend to Daily Physical, Emotional, Developmental, Educational and Special Needs**

Through an equal shared custody arrangement, both parties have attended to the Children's daily needs for the past seven years. Considering that both parties have cared for the Children's daily needs over this lengthy period of time, it is likely that they will both continue to

7

do so. It is evident, however, that Mother takes a more nurturing approach which is more attentive to the Children's daily needs than Father. For example, Father expects the Children to assume responsibility for working on their homework, without him guiding them through the work. Mother, on the other hand, sits down with the Children while they are doing their homework and actively assists with the same. Father testified that R.G. just wants the answers so that he can get the work done. While it is inappropriate to just give the Children the answers to their homework, a more nurturing approach may be necessary considering that R.G. struggles with work to a degree that requires his assistance from a reading and writing specialist. Moreover, while Father disregarded the Children's emotional needs by failing to support them in their extracurricular activities, Mother displayed a high degree of support to the Children in their interests. Not only does Mother attend the Children's events, but also, she engages in the activities through working at concession stands and even coaching R.G.'s soccer team.[1]

Accordingly, the Court believes that both parties are equally likely to attend to the Children's daily needs. Mother, however, goes beyond simply addressing their needs in a manner which advances their emotional needs.

10. **Proximity of the Parties' Residences**

Both parents reside             approximately 4 miles apart. Considering the close proximity of the parties' residences and the fact that both parties reside within the same school district, there is a high degree of flexibility with regard to the ability to craft a custody arrangement for the Children which will allow them to foster a strong relationship with both parties.

---

[1] Mother's zealous approach has, to some extent, ostracized Father. Specifically, Mother organized a cheering section, complete with " G.    fan" t-shirts, to support T.G. at his basketball games. In addition to supporting T.G. , however, members of the group have acted in a manner that makes Father and his family so uncomfortable that they feel that they cannot be anywhere near the " G. fans."

11. **Each party's availability to care for the children or make appropriate child-care arrangements**

Historically, Father's work schedule has been somewhat unpredictable and demanding, leaving the Children's after school care to his wife and transportation to extracurricular activities to Mother. As of one week before the custody trial, however, Father changed to a regular schedule of 7:30-4:00 Monday through Friday. With the new schedule, Father is no longer on call on weekends and anticipates that his weekend work will be reduced to one Saturday two or three times a year.

Mother takes classes at Edinboro University during the day. As a result, she is able to take the Children to school at 6:45 a.m. for open gym. Mother returns home from her classes within 15 to 20 minutes after the Children arrive home from school.

12. **Level of Conflict Between Parties and Ability to Cooperate**

As discussed above, Father allowed his anger toward Mother to disrupt his level of support for the Children in their extra-curricular activities. Furthermore, the parties struggled to agree on an acceptable counsellor for co-parenting counselling. Nevertheless, the parties have been able to work together with regard to changes in the custody schedule. This demonstrated ability, considered in conjunction with the commencement of co-parenting counselling, indicates that the parties are equipped to cooperate for the best interests of the Children.

**CONCLUSION**

Considering that Mother is the Children's primary source of support for homework and extracurricular activities, the Court found it in the Children's best interest to increase the amount of time that they spend in Mother's home, particularly during the week. Nevertheless, considering that the parties have equally shared custody of the Children for the seven years, that Father has a new work schedule which should be more amenable to allowing greater

9

involvement with the Children, the recent institution of co-parent counselling, and the value of fairly equal exposure to two very diverse households, it is important to keep Father as involved in the Children's lives as possible. In that respect, in order to avoid undermining Father's relationship with the Children, the Court increased Father's weekend time at the same time that it increased Mother's weekday time.

## B. Matters Complained of on Appeal

Mother alleges that by allowing Father one weekend more than the May 21, 2014 recommended order, the Court erred. The framing of Mother's allegation of error is, however, misleading. These parties equally shared custody of the Children for seven years prior to the May 21, 2014 Order. The Order entered in May was the result of a recommendation of a custody conciliator; this Court presided over all issues *de novo*. *See Ashford v. Ashford*, 576 A.2d 1076 (Pa. Super. 1990). As a result, this Court considered all of the evidence that Mother asserts it ignored and actually reduced Father's periods of physical custody when it granted Mother primary custody of the Children during the week. As the Court's reasons for this decision are clearly set forth above, further response to Mother's allegations are unnecessary.

For the aforementioned reasons, the August 6, 2014 should be affirmed.

**BY THE COURT**

ELIZABETH K. KELLY, JUDGE

Paige E. Peasley, Esquire
J.E.G.
cc: Custody Office

10