J-A05045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| Z.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| E.G., | |
| Appellant | No. 2311 EDA 2015 |

Appeal from the Order Entered July 1, 2015
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s):  No. 2013-3831

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 13, 2016**

E.G. ("Mother") appeals from the order entered on July 1, 2015, in the Court of Common Pleas of Delaware County by the Honorable Ann A. Osborne awarding Z.L. ("Father") primary physical custody of G.L., (born in July of 2009) and J.L., (born in May of 2011)(collectively "the Children"), awarding Mother partial physical custody of the Children and denying Mother's petition for relocation, pursuant to 23 Pa.C.S.A. § 5337(h).  Upon our review of the record, we affirm.

Mother currently resides with her mother in Virginia Beach, Virginia where she works as a server.  Father currently resides in Wallingford, Pennsylvania and is employed at a furniture company. On April 23, 2013, Father filed a Complaint for Custody seeking primary physical custody and shared legal custody of the Children. On April 26, 2013, Father filed an

---

*Former Justice specially assigned to the Superior Court.

emergency petition to prevent the Children from relocating to Virginia. Father's emergency petition was denied, and a custody hearing was scheduled for June 4, 2013. On August 15, 2013, Mother moved from Pennsylvania to Virginia. The Children visited Mother in Virginia during August and October of 2013, and from December 9, 2013, to January of 2014.

On January 28, 2014, Father filed an emergency petition for primary physical custody of the Children, and the next day he filed an amended emergency petition. Therein, he alleged Mother had retained the children in Virginia Beach and was not allowing him any telephone contact or visitation time with them. In its order of January 30, 2014, the trial court granted Father immediate temporary custody of the Children and directed that the Children be removed from Mother's residence in Virginia. Following a hearing, the trial court ordered on February 7, 2014, that its January 30, 2014, order be vacated and granted Father primary physical custody of the Children. The order further directed that Mother and Father would have shared legal custody of the Children.

On March 3, 2014, Mother filed a petition to relist custody matter. On April 15, 2014, after a custody hearing, the trial court entered a temporary custody order granting Father primary physical custody and Mother partial physical custody of the Children on every third weekend from 6:00 p.m. on

Thursday until 6:00 p.m. on Sunday. The trial court also granted Mother and Father joint legal custody.

On November 10, 2014, Mother filed a pre-trial memorandum and notice of proposed relocation, and on November 12, 2014, Father filed a counter affidavit. On November 14, 2014, the trial court held a custody and relocation hearing. At the hearing, the trial court heard testimony from Mother, Father, T.L., the Children's paternal grandfather ("Paternal Grandfather"), and M.V., Father's friend. Ultimately, in its order entered on July 1, 2015, the trial court denied Mother's petition for relocation and awarded Father primary physical custody and Mother partial physical custody of the Children, should Mother choose to remain in Virginia. Were Mother to return to reside in Pennsylvania, the order provided that she would enjoy primary physical custody of the Children. The trial court also ordered that the parties will share legal custody of the children.

Mother filed a notice of appeal on July 29, 2015.[1]

---

[1] Mother did not file her concise statement of matters complained on appeal with her notice of appeal. On August 10, 2015, this Court issued an order requiring Mother file her statement of errors complained on appeal by August 20, 2015. Mother complied on August 19, 2015. Because Mother timely complied with this Court's order, and no party claims prejudice as a result of Mother's procedural error, we will not quash or dismiss this appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa.Super. 2009); *cf. J.P. v. S.P.*, 991 A.2d 904 (Pa.Super. 2010) (holding that an appellant waives all issues by failing to timely comply with the trial court's direct order to file a concise statement); *J.M.R. v. J.M.*, 1 A.3d 902 (Pa.Super. 2010) (holding that the appellant waived all issues for failing to file a concise statement in compliance with an order of this Court).

On appeal, Mother raises the following questions for our review:

1. Did the [t]rial [c]ourt abuse its discretion and err in denying Mother's [p]etition for [r]elocation as to the following factors under 23 Pa.C.S.A. §5337(h)?

> (A) the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings, and other significant person in the child's life.

> (B) the age, developmental state, needs of the child, and likely impact of the relocation will have on child's physical, educational and emotional development taking into consideration any special needs of the child.

> (C) whether is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

> (D) whether the relocation will enhance the general quality of life for the child including, but not limited to, financial or emotional benefit or educational opportunity.

> (E) the mental and physical condition of a party or member of a party's household: There is no evidence that the mental and physical condition of either party or any members of their households will affect the care of the child.

> (F) whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

> (G) the present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

2. Did the trial court abuse its discretion and err when reviewing the relevant factors that must be considered to determine the best interest of the child, which is the subject of a custody dispute pursuant to 23 Pa.C.S.A. §5328 as follows?

> (A) the need for stability and continuity [in] the child's education, family life and community life.
>
> (B) any other relevant factor. Mother testified, produced evidence and Father admitted during the [e]videntiary [h]earing [sic] that supported Mother's extreme concerns about [F]ather's sex addiction. Despite same, the [trial c]ourt did not believe Father posed a risk to [the C]hildren.

Mother's Brief at 1-2.

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted).

With any custody case under the Custody Act, 23 Pa.C.S.A. §§ 5321-5340, the paramount concern is the best interest of the child. In applying the Custody Act, a trial court must determine a child's best interest through the consideration of the following sixteen factors:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all

relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

Additionally, in determining whether to permit relocation, the trial court must consider the following ten factors:

**§ 5337. Relocation**

\* \* \*

**(h) Relocation factors**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

In her first issue on appeal, Mother argues the trial court abused its discretion by denying her request to relocate to Virginia with the Children. Mother's Brief at 9. Specifically, Mother contends she did not wish to relocate the Children to Virginia "due to a momentary whim or with the intent to be vindictive against" Father, but rather with a desire to protect the Children from Father's addiction and proclivity to violence. *Id.* at 14.

8

Prior to determining whether relocation of the Children would serve their best interest, the trial court applied each factor required in a Section 5337(h) analysis. As to the first relocation factor, the trial court found that that "the Children have established a "very close relationship" with their paternal grandparents and with Paternal Grandfather in particular. Trial Court Opinion, 9/17/15, at 4. The trial court found Paternal Grandfather's testimony that he has fostered a close bond with the Children and cares for them on a daily basis to be credible and "quite moving." In contrast, the trial court noted Mother testified she has extended family "all over, including overseas." Paternal Grandfather's words and the presence of other extended family in the Delaware County area proved to be a significant factor in the trial court's decision to keep the Children in Pennsylvania. *Id.* at 4-5.

Regarding the second factor, the trial court found that, based on extensive testimony in the record, the Children "have established lives" in Delaware County, Pennsylvania. *Id.* at 5. Specifically, the trial court found:

> G.L. was two years old when she moved to Delaware County and J.L. was born in Delaware County. The Children attend school in Delaware County and have an established daily routine which includes significant time spent with their paternal grandparents. Most importantly, G.L. has an Individual Education Program ("I.E.P.") through her school in Delaware County and has made major improvements with her cognitive deficiency through this I.E.P.

*Id.*

The trial court further explained that the third factor "strongly favors denying Mother's request to relocate because of the significant distance

between Virginia and Pennsylvania, the large cost the parties will incur in travelling that distance for a custody arrangement, and the significant burden of travel on the two Children." Findings of Fact and Conclusions of Law, 7/1/15, at 12. The trial court did not find the fourth factor to be relevant in this case and with regard to the fifth factor determined neither party had acted in any manner to thwart the relationship between the other parent and the Children. *Id.*

As to the sixth factor, concerning whether relocation will enhance the general quality of life of the party seeking relocation, the trial court remarked that after moving to Virginia Beach, Mother obtained employment at the same chain restaurant where she had worked in Pennsylvania. It stressed there was no evidence Mother could not work at a similar venue in Delaware County. *Id.* at 13. With respect to the seventh factor, the trial court found that the "relocation would not enhance the [C]hildren's lives since the [C]hildren are well established in their educational and social life in Delaware County and the move to Virginia offered no benefit for the [C]hildren with regard to those aspects." *Id.* at 6. Regarding the eighth factor, the trial court found that Mother's reasoning for relocation was "possible financial issues," but the Children have lived and established a home in Pennsylvania. Custody Order Finding of Facts, 7/1/15, at 13-14. Moreover, the trial court found that the Children's lives would be disrupted if

they were moved from their home in Pennsylvania. Trial Court Opinion, 9/17/15, at 14.

As to the ninth factor, a consideration of the present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party,

> [the trial court] recognized that there was a Protection from Abuse Order issued against Father for the protection of Mother and her mother. The Order was granted for six months and expired in September of 2014. The PFA Order stemmed from an event in which Mother and Father were arguing over where the [C]hildren would live, which then escalated into Father pinning Mother to the bed and choking her. The [trial c]ourt viewed this event as a result of an impassioned argument regarding their children and does not believe that Father poses a continued threat to Mother or a threat at all to the [C]hildren. To [the trial c]ourt's knowledge, since that incident there have been no further reported threats of violence by Father toward Mother.

*Id*. at 7-8.

Mother argued it is uncontradicted that Father has a sex addiction. Mother's Brief at 13. Mother testified she believed Father was attending counseling for sex addiction while Father testified that he does not have a sex addiction. N.T., 11/14/14, at 171-76; 224-35. The trial court acknowledged Mother presented evidence concerning women that Father "followed" on social media websites and noted that "although the women were scantily clad, there was no proof that any of the women were underage or were engaged in illegal activity." Trial Court Opinion, 9/17/15, at 8. The trial court found that, while "Father was inclined to view certain types of photographs or pornography," Father "did not pose any type of sexual risk to

11

the [C]hildren." *Id.* Moreover, Father read into the record the findings of Dr. Catherine Surbeck who had performed a psychosexual evaluation following a hearing before the Custody master that Father did not meet the criteria for a sexual disorder nor did she posit Father was at risk to commit a sexual offense. N.T., 11/14/14, at 222.

Essentially, Mother's seeks review of the trial court's findings of fact and credibility determinations. This Court's standard of review, however, does not permit us to re-find facts, re-weigh the evidence, or impeach the trial court's credibility determinations. To the contrary, we may only reject the trial court's conclusions if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. *See C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012). Therefore, we find no abuse of discretion.

Lastly, Mother argues the trial court abused its discretion and erred when reviewing the relevant factors that must be considered to determine the best interest of the Children. Mother's Brief at 15. Mother argues the trial court erred in failing to consider the need for stability and continuity in the Children's education, family life and community life. *Id.* at 15. In finding it was in the best interest of the Children to remain in Delaware County, the trial court stated:

> the [C]hildren have lived in Delaware County most of their lives and have an established life here. The [C]hildren attend school in Delaware County, have friends in Delaware County, have established bonds with relatives in Delaware County, and have

12

had success with overcoming learning deficiencies in Delaware County. Mother did not provide much evidence, if any, explaining how moving the [C]hildren to Virginia would benefit them with regard to these categories. Mother enrolled G.L. in school in Virginia for a few weeks when she visited, but this short foray in a Virginia school was a period of instability when compared to G.L.'s regular attendance at school in Delaware County.

Trial Court Opinion, 9/17/15, at 9.

Mother also avers the trial court erred in considering the best interest of the Children when it did not find the evidence presented at trial concerning alleged Father's sex addiction posed a risk to the Children. Mother's Brief at 15. With regard to factor fifteen, the trial court found there was no evidence or testimony of physical or mental condition evidence that would affect the Children. Trial Court Opinion, 9/17/15, at 7. The trial court found that "[t]here was testimony regarding Mother's excessive drinking and there was testimony regarding Father's viewing of sexual explicit pictures on social media." *Id.* After Father was evaluated by Dr. Surbeck, "there was no need for treatment and no risk posed to the [C]hildren." *Id.*

Mother testified and presented evidence that Father viewed pornographic material which she claimed supported her concerns about Father's sex addiction. N.T., 11/14/14, at 192-94. The trial court found that Mother's testimony "lacked credibility because it was grounded in her interpretation of documents and was rife with the surmise and personal opinion grounded on her interpretation of photographic images." Trial Court Opinion, 9/17/15, at 6. The trial court did not see any proof that Father

13

posed any sort of risk to the Children. *Id.* at 9-10. As previously stated, Dr. Catherine Surbeck found that Father did not meet the criteria for a sexual disorder nor did Father present a risk for sexual offense. N.T., 11/14/14, at 222. Furthermore, the trial court analyzed each factor regarding custody and relocation and found that, as stated above, the factors weighed in Father's favor. **See** Custody Order Finding of Facts, 7/1/15, at 5-14.

Mother's last issue on appeal seeks review of the trial court's findings of fact and credibility determinations. As noted above, our standard of review, however, does not permit this Court to re-find facts, re-weigh the evidence, or to impeach the credibility determinations of the trial court. We may only reject the trial court's conclusions if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court. ***See C.R.F., III***, 45 A.3d at 443. We find no abuse of discretion.

Accordingly, for the foregoing reasons, we affirm the trial court's order awarding Father primary physical custody and Mother partial physical custody of the Children and denying Mother's petition for relocation, pursuant to 23 Pa.C.S.A. § 5337(h).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2016