J-S29014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.W.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| J.L. AND A.M.B. | |
| APPEAL OF: J.L. | No. 1762 WDA 2015 |

Appeal from the Order Entered October 9, 2015
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 2004 OF 2014-D

BEFORE:  BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 25, 2016**

J.L. ("Mother") appeals from the order entered October 9, 2015, in the Court of Common Pleas of Westmoreland County, which awarded partial physical custody of her son, A.B., and her daughter, N.B. (collectively, "the Children"), to her father, J.W.L. ("Maternal Grandfather").[1]  After careful review, we affirm.

A.B. was born in February of 2011, and N.B. was born in May of 2012. In May of 2013, A.M.B. ended his relationship with Mother.  During the summer of 2013, Maternal Grandfather, and his wife, B.L. ("Maternal Step-Grandmother"), began assisting Mother by babysitting the Children.  The

_____

[1] The biological father of the Children is A.M.B.  A.M.B. did not appear during the custody hearing and the trial court did not award A.M.B. any form of custody.  A.M.B. did not appeal from the subject custody order, and he did not file a brief in connection with the instant appeal.

*Former Justice specially assigned to the Superior Court.

majority of this assistance was provided by Maternal Step-Grandmother, because Maternal Grandfather is employed as an "over the road" truck driver, and spends most of his time away from home. Mother also lived at Maternal Grandfather's residence for a period of time.[2] After Mother moved out of Maternal Grandfather's home, Maternal Grandfather and Maternal Step-Grandmother continued to visit with the Children. Mother ended these visits in the fall of 2014.

On November 19, 2014, Maternal Grandfather filed a complaint for partial physical custody of the Children. A custody hearing was held on June 4, 2015, and July 31, 2015, during which the trial court heard the testimony of Maternal Step-Grandmother; certified nurse assistant, Diana Jenkins, who provides care for one of Maternal Grandfather's neighbors; the Children's maternal great uncle, P.L.; the Children's maternal great grandmother, M.C.; the Children's maternal grandmother, T.H.; Mother; Maternal Grandfather; Lisa Lersch, assistant director of the Children's former daycare; and Mother's boyfriend, M.G. On October 9, 2015, the court issued an order and opinion awarding Mother primary physical custody and sole legal custody of the Children. The court awarded Maternal Grandfather partial physical custody

_____

[2] The amount of time that Mother resided at Maternal Grandfather's home was a hotly-debated topic during the custody hearing. Maternal Grandfather testified that Mother resided at his home for at least four months, while Mother insisted that she only lived there for two-and-a-half weeks. N.T., 6/4/2015, at 95, 116.

of the Children "[d]uring such periods that [Maternal Grandfather] is not attending to his duties as an over-the-road trucker…." Order, 10/9/2015, at ¶ 3a. The court indicated that Maternal Grandfather's periods of partial physical custody shall not exceed five days, and, starting in 2020, shall not exceed seven days. *Id.* at ¶ 3b. Mother timely filed a notice of appeal on November 5, 2015.[3]

Mother now raises the following issues for our review.

1. Whether the trial court erred in its analysis of the evidence by solely weighing the factors in 23 Pa. C.S.A. §5328(a) and not considering those factors set forth in 23 Pa. C.S.A. §5328(c)(1)[?]

2. Whether the trial court could have reasonably arrived at the same result had it applied the proper analysis of the competent evidence presented at trial[?]

Mother's brief at 5 (suggested answers omitted).

_____

[3] Mother failed to file her concise statement of errors complained of on appeal at the same time as her notice of appeal, in violation of Pa.R.A.P. 1925(a)(2)(i). The trial court ordered Mother to file a concise statement within twenty-one days on November 10, 2015, and Mother timely complied by filing a concise statement on November 18, 2015. Maternal Grandfather has not objected or claimed any prejudice as a result of Mother's failure to file a concise statement until ordered to do so by the trial court. Thus, we have accepted Mother's concise statement in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that a mother's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party); *cf. J.P. v. S.P.*, 991 A.2d 904, 908 (Pa. Super. 2010) (stating that an appellant waived her issues on appeal when she failed to file a concise statement with her notice of appeal, and then also failed to comply with the trial court's order to file a concise statement within twenty-one days).

We consider these issues mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
>> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>>
>> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 4 -

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In addition, when awarding partial physical custody to a grandparent who has standing pursuant to 23 Pa.C.S. § 5325(1) or (2),[4] the court must consider the following factors:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1).

_____

[4] Sections 5325(1) and (2) provide as follows:

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage….

23 Pa.C.S. § 5325(1)-(2). Here, there is no dispute that Maternal Grandfather had standing to seek custody pursuant to Section 5325(2).

Instantly, in its opinion accompanying the subject custody order, the trial court discussed each of the Section 5328(a) factors. The court found that Sections 5328(a)(3), (10), and (14) weigh in favor of Mother, and that Section 5328(a)(8) weighed in favor of Maternal Grandfather. Trial Court Opinion, 10/9/2015, at 2, 4-5. The court concluded that the remaining factors did not weigh in favor of either party. *Id.* at 1-6. The court subsequently filed an additional opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii). In the supplemental opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii), the court discussed the factors listed in Section 5328(c)(1). The court concluded that Section 5328(c)(1)(i), weighs in favor of Mother, while Sections 5328(c)(1)(ii) and (iii) weigh in favor of Maternal Grandfather. Trial Court Opinion, 12/11/15, at 2-3. In its opinions, the court observed that there is "an apparent affinity between the minor children, both Parties, and their extended family." Trial Court Opinion, 10/9/2015, at 4. The court noted that it was "struck by the clear adoration and affection of [Maternal Grandfather] and his wife, … toward the minor children[,]" and that there is a "need and benefit of individuals like [Maternal Grandfather] in the minor children's lives." Trial Court Opinion, 12/11/15, at 3, 3 n.1.

On appeal, Mother presents two interrelated issues, which we address together.[5]   Mother argues that the trial court abused its discretion by awarding partial physical custody to Maternal Grandfather, in the light of the Section 5328(a) and (c)(1) factors.   Mother discusses each of these factors, and offers her own interpretation as to how the court should have applied the evidence presented during the custody hearing.   Mother contends, *inter alia*, that Maternal Grandfather has only a minimal relationship with the Children, and that Maternal Step-Grandmother uses drugs and has a history of involvement with child protective services.   Mother's brief at 12-14, 18-19, 22-25.   Mother also asserts that the subject custody order fails to specify how often Maternal Grandfather will be permitted to exercise his periods of partial physical custody, and that the order takes an unreasonable amount of custody time away from Mother.   *Id.* at 14-15.   Mother argues that Maternal Grandfather could have partial physical custody for as much as eighty-four days a year starting in 2020 if he exercises monthly visits, and that this arrangement "prevents [M]other and other family members from

_____

[5] Mother indicates that her first issue is that the trial court erred by considering the Section 5328(a) factors only, and by failing to consider the factors listed at Section 5328(c)(1).   However, the actual substance of Mother's argument is not that the court failed to consider the Section 5328(c)(1) factors, but that the court reached improper conclusions during its consideration of those factors.   As noted *supra*, the court considered Section 5328(c)(1) in its opinion pursuant to Pa.R.A.P. 1925(a)(2)(ii).

planning family time together without the risk that [Maternal G]randfather will call to exercise his period of partial custody and ruin their plans." *Id.*

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by awarding partial physical custody to Maternal Grandfather. At the outset, we express our concern about Maternal Step-Grandmother's ongoing drug use, and we stress that our affirmance of the subject custody order does not suggest that we condone Maternal Step-Grandmother's behavior. During the custody hearing, Maternal Step-Grandmother admitted that she engages in daily marijuana use. N.T., 6/4/2015, at 13. Maternal Step-Grandmother stated that she used marijuana even when the Children were at her home, but she claimed that she did not use marijuana in the presence of the Children, and that she would smoke marijuana while the Children were outside. *Id.* While Maternal Step-Grandmother's use of an illegal substance is troubling, we note that there also was testimony indicating that Mother's boyfriend, M.G., drove the Children home after consuming alcohol, which is similarly concerning. Specifically, Maternal Grandfather described an incident during which M.G. consumed alcohol "excessively," and then put the Children in his pickup truck and drove away. *Id.* at 116. According to Maternal Grandfather, he protested that M.G. should not be driving the Children in his drunken state, but Mother intervened, saying, "he'll be okay, he's a safe driver." *Id.* Both of the parties in this matter, and their significant others,

have placed the safety of the Children at risk by engaging in, or permitting, these types of activities.[6]

Despite these issues, the record supports the trial court's finding that the Children are bonded with Maternal Grandfather and Maternal Step-Grandmother, and Maternal Grandfather and Maternal Step-Grandmother care deeply for the Children. Mother acknowledged during the custody hearing that the Children have asked to visit Maternal Grandfather's home, but that Mother has told them that they were not permitted to go. *Id.* at 110. Mother stated, "they wanted to go over at first, like when everything was going on. I told them no, they're mean to Mommy, they're not being good. … They know what's going on, and after that, they haven't asked for you guys at all." *Id.* It was reasonable for the trial court to conclude that

_____

[6] Additionally, there was testimony presented during the custody hearing that Maternal Grandfather consumes alcohol excessively, and that Mother has engaged in excessive drinking and marijuana use. In its opinion accompanying the subject custody order, the court stated,

> the [trial c]ourt finds credible evidence that [Maternal Grandfather] has a history of the use and likely abuse of alcohol. However, it is not apparent that [Maternal Grandfather] currently has issues with abuse of alcohol. … However, the [c]ourt left the record open for the limited purpose of receiving a report from SPHS of Greensburg, which the [c]ourt received on or about August 4, 2015. That report confirms the [c]ourt's belief that [Maternal Grandfather] exhibits no present abuse of drugs or alcohol.

Trial Court Opinion, 10/9/2015, at 5-6. The court did not indicate whether it found the testimony concerning alleged drinking and drug use by Mother to be credible.

the Children would benefit from spending time in the custody of Maternal Grandfather, and that allowing Mother to withhold the Children would not be in their best interest. As this Court has explained,

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)). "[I]f competent evidence supports the court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003) (quoting ***In re N.C.***, 763 A.2d 913, 917 (Pa. Super. 2000)).

Additionally, we reject Mother's claim that the subject custody order fails to specify how often Maternal Grandfather may exercise partial physical custody of the Children, and/or unreasonably interferes with Mother's relationship with the Children. As noted *supra*, the court awarded Maternal Grandfather partial physical custody of the Children "[d]uring such periods that [Maternal Grandfather] is not attending to his duties as an over-the-road trucker…." Order, 10/9/2015, at ¶ 3a. During the custody hearing, Maternal Grandfather testified that the company he works for requires him to be on the road for at least twenty-eight days before he is allowed to

return home, and that he is allowed to spend only two days at home before returning to road. N.T., 6/4/2015, at 120. Maternal Grandfather explained that he prefers to spend five to six weeks on the road at a time, because this allows him to return home for four or four-and-a-half days instead of just two. *Id.* Maternal Grandfather noted that he spent nearly seven weeks on the road immediately prior to the first day of the custody hearing, and that he anticipated spending another six to seven weeks on the road afterward. *Id.* at 120-21. At the conclusion of the second day of testimony, Maternal Grandfather stated that he would likely be on the road for six to eight weeks and/or until the end of October. N.T., 7/31/2015, at 48.

Based on this testimony, it would be difficult, if not impossible, for the trial court to make its award of partial physical custody any more specific. Attempting to set a frequency for Maternal Grandfather's periods of partial physical custody would prove to be futile, given that Maternal Grandfather can go anywhere from twenty-eight days to months at a time without being home. While it may be difficult for Mother to predict when she will need to provide Maternal Grandfather with the Children, we note that Mother is unemployed, and she does not appear to have any scheduling restraints.

Further, it is clear that Maternal Grandfather's periods of partial physical custody will have a minimal impact on Mother's relationship with the Children. Based on Maternal Grandfather's testimony, he will be exercising about four days of partial physical custody of the Children less than once per

month.   Mother's claim that Maternal Grandfather may end up exercising greater amounts of partial physical custody in the future is mere speculation, as there was no testimony during the custody hearing that Maternal Grandfather's work schedule is likely to change.

Accordingly, because we conclude that the trial court did not abuse its discretion by awarding partial physical custody of the Children to Maternal Grandfather when he is not working, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2016