J-S22009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF BABY L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: B.E., BIOLOGICAL FATHER | |
| | No. 1827 MDA 2016 |

Appeal from the Decree October 7, 2016
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s): 108-AD-2015

BEFORE:  SHOGAN, MOULTON, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 11, 2017**

B.E. ("Father") appeals from the decree entered on October 7, 2016, in the Court of Common Pleas of Dauphin County, involuntarily terminating his parental rights to his son, Baby L. ("Child"), born in May of 2015.[1]  After careful consideration, we affirm.

The record reveals the following relevant procedural history.  On December 22, 2015, J.L.H. ("Prospective Adoptive Father") and his wife, S.E.H. ("Prospective Adoptive Mother") (collectively "Prospective Adoptive

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] By separate decree entered on October 7, 2016, the orphans' court granted the petition to confirm consent to terminate the parental rights of T.M.B. ("Mother").  Mother filed a notice of appeal, which this Court quashed *sua sponte* as untimely.  Mother did not file a brief in Father's appeal.

Parents"), filed a petition for the involuntary termination of Father's parental rights to Child pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (2). In addition, on December 22, 2015, Prospective Adoptive Parents filed a report of intent to adopt, a petition for adoption, and a petition to confirm consent to the voluntary termination of Mother's parental rights.

On April 20, 2016, Prospective Adoptive Parents filed an amended petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (6), and (b).[2] The orphans' court held hearings on September 19, 2016, and October 5, 2016. The court set forth the following factual findings, in relevant part, which the testimonial evidence supports.[3]

_____

[2] In his brief, Father states that he was served with the amended involuntary termination petition but not the petition filed in December of 2015. Father's Brief at 16. The orphans' court found that Father was served with the amended petition only. N.T., 10/5/16, at 98; Trial Court Opinion, 12/20/16, at 9.

[3] Prospective Adoptive Parents presented the testimony of Morgan C. Davis, Esquire, the former associate attorney at the law firm representing Prospective Adoptive Parents; Renee Dreisbach, the legal secretary at the law firm representing Prospective Adoptive Parents; Kasey Shienvold, Psy.D., a clinical and forensic psychologist who performed a psychological assessment of Prospective Adoptive Parents and observed their relationship with Child in August of 2016; Prospective Adoptive Father; Prospective Adoptive Mother; and L.F., Prospective Adoptive Maternal Grandmother. Father testified on his own behalf, and he presented the testimony of A.E., his sister; and Elizabeth Ruby, Esquire, an assistant public defender at the Dauphin County Public Defender's Office. Mother, who contested the petition to confirm consent of the termination of parental rights, testified on her own behalf. N.T., 9/19/16, 1-183; N.T., 10/5/16, at 1-102.

4. Father was told immediately by Mother when she discovered she was pregnant.

5. Neither Father nor his extended, large family[,] gave Mother any emotional or financial support during the pregnancy.

6. Mother did not tell Father when she went into labor and gave birth to [Child in] May [of] 2015.

7. [Two days after Child's birth,] Mother told Father and the public through postings on Facebook that [Child] was stillborn.

8. Father was enraged and subjected Mother to angry and threatening verbal attacks for which she filed a Petition for Protection from Abuse ["PFA"] in May of 2015.

9. Father's bail was revoked after the [PFA] Order was entered and he was incarcerated in late May 2015.[4]

10. Father plead [sic] guilty to simple assault and aggravated assault of two women for which he was sentenced to five to fifteen years in a state correctional facility.[5]

11. In late December, 2015, Father learned from Mother that [Child] was alive and had been placed with a couple who were caring for [Child].

---

[4] Father was incarcerated on May 19, 2015, the same date that he appeared in court on a miscellaneous listing regarding separate criminal charges for simple and aggravated assault, for which he was then on bail. The assault charges were lodged against him before Child's birth, and neither charge involved Mother as the victim. Rather, the charges alleged two different women as victims. On approximately May 19, 2015, Father was charged with a crime involving terroristic threats, which arose from the same incident that was the basis of the PFA order issued against him on behalf of Mother. As a result of the new criminal charge, Father's bail was revoked, and he was incarcerated. N.T., 9/19/16, at 115-119, 121-122.

[5] On February 9, 2016, Father pleaded guilty to the assault charges. N.T., 9/19/16, at 116.

12. Knowing the child was alive, Father did not provide any financial assistance for the child, nor did he send gifts, cards, diapers, or letters to [Child].

* * *

14. Father will be incarcerated for a minimum of three and one-half to five years, but possibly longer.

15. Father has an extensive criminal record.

16. Dr. Kasey Shienvold testified on behalf of [Prospective Adoptive Parents] to the fact that [Child] was strongly bonded to [Prospective Adoptive Parents].

17. [Child] has lived with [Prospective Adoptive Parents] since May 16, 2015.

18. The Guardian Ad Litem recommended termination of Father's parental rights, coupled with confirmation of Mother's consent to terminate her parental rights as in the best interest of [Child], based on incapacity of Father to care for [Child] for at least three and one-half years and possibly much longer, and the fact he had made no attempt to provide [Child] with any necessities of life or gifts since learning the child was alive.

Trial Court Opinion, 12/20/16, at 7-9. In addition, the orphans' court found that Father "learned in early January of 2016 that [Child] was being cared for by a pre-adoptive couple." *Id.* at 9 (citation to record omitted).

Further, the record reveals that Father mailed a handwritten letter to Mother dated January 21, 2016, which she forwarded to counsel who represented her during the subject proceedings in her contest of the confirm

consent petition, postmarked February 4, 2016.[6]  N.T., 9/19/16, at 178-179; Respondent's Exhibit C.  Mother requested that counsel, in turn, forward the letter to counsel for Prospective Adoptive Parents.  N.T., 9/19/16, at 179-181.  In the letter, Father stated as follows, in pertinent part.

> I was told on the first week of this year that [Child] is alive and well.
>
> I was also made aware that he was given to a family in a temporary arrangement.
>
> I fully dispute any and all terms of this agreement and request that [Child] be given back to his mother. . . .
>
> I'm aware that no adoption is legal without [b]oth parents['] consent.  I am totally against everything that has transpired without my knowledge!
>
> I want [Child] back with his mother. . . .

Respondent's Exhibit C.

Prospective Adoptive Mother testified that in August of 2015, Mother told her "she did know who the father was of the child. . . . [Mother] said she had a PFA [order] against him.  She . . . told me that [Father] knew that she was pregnant and that the baby was born but that she hadn't told [Father] that she had placed [Child] for adoption."  N.T., 9/19/16, at 146. Prospective Adoptive Mother testified that she first learned Mother had lied

---

[6] Mother acknowledged during direct examination that at the time she forwarded Father's letter, she was "awaiting to retain [counsel] until [she] got the funds. . . ."  N.T., 9/19/16, at 181.

to Father by telling him Child was stillborn when she received his January 21, 2016 letter. N.T., 9/19/16, at 146-147.

By decree entered on October 7, 2016, the orphans' court involuntarily terminated Father's parental rights. Father timely filed a notice of appeal on November 3, 2016.[7] The orphans' court filed its opinion pursuant to Pa.R.A.P. 1925(a) on December 21, 2016.

On appeal, Father presents the following issue for our review:

1. Whether the [t]rial [c]ourt committed prejudicial error and/or abused its discretion in terminating [Father's] parental rights under 23 Pa.C.S.A. § 2511 when:

(a) [Prospective] Adoptive Mother, who is an attorney, and her counsel failed to notify [F]ather in a timely manner about the adoption[;] and/or

(b) Father and Father's family previously have been informed the child was stillborn; and/or

_____

[7] Father did not concurrently file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). By order dated November 7, 2016, the orphans' court directed Father to file the concise statement by November 30, 2016. On November 30, 2016, Father filed a motion for an extension of time to file the concise statement. The court granted Father's motion on December 1, 2016, and directed that he file the concise statement within twelve days. Father timely complied. Because no party claims prejudice as a result of Father's procedural violation, we will not quash or dismiss his appeal. **See In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to concurrently file the Rule 1925(b) statement with the notice of appeal did not warrant quashing or dismissing the appeal, as no court order had been violated, and there was no prejudice to any party); **Cf. J.P. v. S.P.**, 991 A.2d 904, 908 (Pa. Super. 2010) (stating that, where the appellant not only failed to concurrently file a Rule 1925(b) statement with her notice of appeal but also failed to comply with the trial court's order to file the Rule 1925(b) statement within twenty-one days, she waived her issues on appeal).

(c) Father was <u>never</u> informed [that] Mother had already allegedly agreed to said adoption proceedings and was never permitted to exercise his parental duties.

Father's Brief at 5 (emphasis in original).

Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, we conclude that the certified record supports the decree pursuant to Sections 2511(a)(2) and (b), which provide as follows.[8]

> **(a) General Rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[8] Based on this disposition, we need not review the decree pursuant to Sections 2511(a)(1) and (6). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

23 Pa.C.S. §§ 2511(a)(2), (b).

This Court has stated as follows:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). Further, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2). The Court held that:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 828. With respect to the third factor, whether the parent can remedy the incapacity, the *S.P.* Court cited with approval the concurring opinion in *In re R.I.S.*, 36 A.3d 567 (Pa. 2011) (plurality), as follows:

The fact of incarceration during an ongoing dependency action will not disqualify a parent from resuming parental responsibility so long as the parent will be released quickly enough to permit the court to provide the child with timely permanency upon reunification. If, however, the length of parent's incarceration will preclude the court from unifying the (former) prisoner and the child on a timely basis in order to provide the child with a permanent home to which he or she is entitled, then the length of sentence, standing alone, should and does meet the legal criteria for involuntary termination of the incarcerated parent's parental rights under 23 Pa.C.S. § 2511(a).

*In re Adoption of S.P.*, 47 A.3d at 829-830 (citing *In re R.I.S.*, 36 A.3d at 576)(Baer, J., concurring)).

With respect to 23 Pa.C.S. § 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, turning to Section 2511(a)(2), the orphans' court found *In re Adoption of S.P.* controlling in terminating Father's parental rights. The court concluded that the length of Father's incarceration is a determinative

- 10 -

factor warranting termination of his parental rights.[9]  N.T., 10/5/16, at 99-100; Trial Court Opinion, 12/20/16, at 7.

On appeal, Father argues that the orphans' court erred in terminating his parental rights "by focusing primarily on his criminal charges (which did not involve children) [and] his length of incarceration. . . ."  Father's Brief at 15.  Father's argument is based on the undisputed facts that (1) Mother had lied by telling him that Child was stillborn; and (2) Prospective Adoptive Parents and their counsel learned of Father's name and his incarceration in August of 2015, but they failed to contact him or inform him about the prospective adoption.  *Id.* at 16.

It is undisputed that Father did not learn that Child was alive until Mother told him in late December of 2015.  In addition, Father did not learn of the prospective adoption until Mother told him in early January of 2016.  Father argues "[t]his delay substantially impaired [his] ability to be a father. . . ."  Father's brief at 18.  He asserts "had Mother never lied, he would not have threatened her (a charge which was later dismissed) and his

---

[9] It is important to note that, at the conclusion of the testimonial evidence, the Guardian *ad Litem* ("GAL"), on the record and in open court, recommended the involuntary termination of Father's parental rights pursuant to Section 2511(a)(2) based on his sentence of a term of incarceration of five to fifteen years.  N.T., 10/5/16, at 90-91.  The GAL emphasized that, if the court did not terminate Father's parental rights, "we might be creating a dependent child. . . .  We would essentially be creating a child that has only one parent who is incarcerated. . . ."  *Id.* at 90.  The GAL further stated, "the reality is that . . . [C]hild's life would be put on hold during that [time during which he was adjudicated dependent]."  *Id.* at 91.

bail would not have been revoked which would have allowed him to physically, financially and emotionally bond and care for [Child]." *Id.* at 24. We are unpersuaded by Father's arguments.

We do not condone Mother's bad conduct wherein, for approximately the first seven and one-half months of Child's life, she led Father to believe that [Child] was stillborn. However, Mother's conduct does not preserve Father's parental rights under Section 2511(a)(2). Indeed, Father's own conduct warrants termination.

As noted, on February 9, 2016, Father pleaded guilty to crimes involving assault of two separate women, which he committed before Child's birth, and for which he was sentenced to a total term of incarceration of five to fifteen years. It is important to note that Father's criminal charge in May of 2015, for terroristic threats against Mother upon being told Child was stillborn, was dismissed.[10] N.T., 9/19/16, at 116. As such, Mother's bad conduct, and Father's response, did not result in any criminal penalty to Father. Although Father's bail was revoked due to the new criminal charge, he was credited for the time he served until his sentencing on February 9, 2016. *Id.* at 120-121. When the termination hearing concluded, three and

---

[10] Elizabeth Ruby, Esquire, the assistant public defender in the Dauphin County Public Defender's Office, testified that the charge was dismissed upon the District Attorney learning of Mother's aforementioned bad conduct. N.T., 9/19/16, at 120. The record does not specify the date that the charge was dismissed. To the best that we can discern, it was dismissed in January of 2016. *Id.* at 119-120.

one-half years remained on Father's minimum sentence, at which time Child will be nearly five years old. If Father serves his maximum sentence, Child will be approximately fifteen years old when Father is released from prison.

We discern no abuse of discretion by the orphans' court in concluding that Father's repeated and continued incapacity due to his incarceration has caused Child to be without essential parental care, control, or subsistence, and that the causes of Father's incapacity cannot or will not be remedied in light of the length of his incarceration. *See In re Adoption of S.P.*, 47 A.3d at 829-830 (citing *In re R.I.S.*, 36 A.3d at 576) (Baer, J., concurring)) ("If . . . the length of parent's incarceration will preclude the court from unifying the (former) prisoner and the child on a timely basis in order to provide the child with a permanent home to which he or she is entitled, then the length of sentence, standing alone, should and does meet the legal criteria for involuntary termination of the incarcerated parent's parental rights under 23 Pa.C.S. § 2511(a).").

With respect to Section 2511(b), this Court has explained as follows:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an

existing, necessary and beneficial relationship." ***In re Adoption of T.B.B.***, 835 A.2d 387, 397 (Pa. Super. 2003). As we explained in ***In re A.S.***, 11 A.3d 473, 483 (Pa. Super. 2010),

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011).

Instantly, Father argues, "little, if any, evidence and consideration was placed on the record that discerns the nature of the bond [between him and Child] or the effects on [Child] of severing such bond." Father's brief at 15. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." ***In re K.Z.S.***, 946 A.2d at 762-763. Therefore, it was reasonable for the orphans' court to infer that no bond exists between Father and Child. We will not disturb the decree on this basis when there is no record evidence of any bond between Child and Father.

In the alternative, Father argues that a bond "would have been developed by way of a visitation schedule but Father was never afforded that opportunity" due to Mother's bad conduct. Father's Brief at 15. We, likewise, will not disturb the decree on this basis when the orphans' court terminated Father's parental rights under Section 2511(b) because Child "is bonded and flourishing physically and emotionally with [Prospective Adoptive

Parents]." Trial Court Opinion, 12/20/16, at 10. As such, the court determined "it is in the best interest of [Child], giving primary consideration to his developmental, physical and emotional needs, to terminate Father's parental rights." *Id.*

The testimonial evidence supports the court's findings. Prospective Adoptive Mother testified that Child has resided in the custody of the Prospective Adoptive Parents since May 16, 2015, shortly after his birth. N.T., 9/19/16, at 146. She testified that Child, then fourteen months old, is happy and healthy, and that he "is very bonded" to Prospective Adoptive Parents. *Id.* at 131-132, 136.

Similarly, Dr. Schienvold testified that, based upon his observation in August of 2016, Child showed "no evidence of delays in his gross or fine motor [skills]. . . . He appeared to be [ ] fairly happy and healthy. . . ." *Id.* at 46. Further, upon inquiry by the orphans' court, Dr. Shienvold testified that the termination of Father's and Mother's parental rights would not have "a tremendous effect on the child assuming that the [Prospective Adoptive Parents] maintain their kind of healthy relationship with the child and maintain . . . their role as devoted and caring parents." *Id.* at 68-69. Upon inquiry by the court, Dr. Shienvold concluded that there would be no negative effect on Child if Father's and Mother's parental rights are terminated. *Id.* at 69.

Based on the foregoing and upon careful review of the totality of the record evidence, the applicable law, and our standard of review, we discern no abuse of discretion by the orphans' court in concluding that termination of Father's parental rights serves the "developmental, physical and emotional needs and welfare" of Child. 23 Pa.C.S. § 2511(b); **see also In re B., N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (stating that "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment"). Accordingly, we affirm the decree pursuant to Sections 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2017