J-A07003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.W. AND B.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.D., D.D., AND THE LCCYSSA | : | No. 1735 MDA 2017 |

Appeal from the Order Entered October 10, 2017
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-16-11045

BEFORE: PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, J.: **FILED JUNE 05, 2018**

C.W. and B.W. (collectively, "Grandparents") appeal from the October 10, 2017 order entered in the Court of Common Pleas of Lancaster County, which awarded primary physical custody and sole legal custody of R.D. ("Child"), Grandparents' maternal granddaughter, to the Lancaster County Children and Youth Social Services Agency ("LCCYSA"). We affirm.

D.D. ("Mother") and N.D. ("Father") (collectively, "Parents") are the biological parents of Child, born in December 2014. Mother has two children from a prior relationship, T.M. and B.M., and Father has one Child from a prior relationship, A.S, all of whom resided with Child in Parents' home. On May 17, 2016, LCCYSA received a report regarding A.S., which alleged as follows:

> 7. [LCCYSA] received a report regarding A.S. on May 17, 2016, alleging that A.S. had bruises on his arms that looked like fingerprints caused by Mother (that is, his stepmother, D.D.).

_____

* Former Justice specially assigned to the Superior Court.

8. When A.S. soiled himself, Mother would put A.S. in a small room padded with wrestling mats, where A.S. was made to sleep in a filthy state.

9. On other occasions, Mother wrapped sheets around A.S. from his wrist to his ankles and taped the sheets. Mother told A.S. to tell people this was a game called "mermaid".

10. Mother hit A.S. in the head.

11. Mother would place A.S. in a tub of cold water until he turned blue.

Trial Court Opinion, 12/8/17, at 4-5 (internal citations omitted).

On July 23, 2017, R.D. ("Foster Mother"), Child's paternal aunt, received text messages from Mother who was "hysterical and crying." *Id*., at 5. *See also* N.T., 8/16/17, at 205-06. Mother indicated to Foster Mother that A.S. was "too much to handle and that [Father] should not have left him – him home with her." *Id*., at 206. Foster Mother went to Mother's home where she witnessed A.S. standing naked in a bedroom with feces on his body. *See id*. Foster Mother removed A.S. from Mother's care and assumed custody of him.

Based on these reports, on November 7, 2016, police obtained a warrant to search Mother's and Father's home. At the time of the search, the police removed Child from the home and LCCYSA placed her in an emergency foster care home. Following a shelter care hearing, LCCYSA placed Child with Foster Parents, who also had custody of A.S. T.M. and B.M. were also removed from the home and placed with their biological father and his girlfriend. The police charged Mother with multiple counts of felony aggravated assault, false imprisonment, unlawful restriction of a minor, endangering the welfare of

children, terroristic threats and recklessly endangering another person. ***See*** ***Trial Court Opinion***, 12/8/17, at 6. Father was charged with conspiracy to commit aggravated assault and endangering the welfare of children. ***See id***., at 7.

On November 28, 2016, the juvenile court adjudicated Child dependent, and the record reveals that the juvenile court made a finding of aggravated circumstances for both Mother and Father.[1] ***See id***., at 2. Child's primary placement goal is adoption and LCCYSA has filed a petition to terminate the parental rights of Mother and Father. ***See id***., at 2-3. Foster Parents present themselves as permanent placement resources and have expressed a desire to adopt both A.S. and Child.

On December 12, 2016, Grandparents filed a complaint for custody, requesting that the trial court award them primary physical custody and sole legal custody of Child. The trial court scheduled the matter for trial and entered several interim orders detailing the terms of LCCYSA's primary physical custody and Grandparents' partial physical custody. A two-day trial commenced on August 16, 2017. At the hearing, Grandparents testified on their own behalf and presented the testimony of H.K. and B.B., Child's maternal aunts; and Mary Ann Friese, Grandparents' friend. LCCYSA presented the testimony of Theresa Gamber, the LCCYSA caseworker assigned

---

[1] The record in this matter, arising in custody, is distinct from, and omits the contents of, the record in the dependency action. We note, however, that the trial court's opinion discusses and cites to the juvenile court docket entries.

to the family; Katie Rutt, the family's permanency caseworker; Allison Huber, the foster care caseworker; and Foster Parents.

On October 10, 2017, the trial court denied Grandparents' complaint for custody and awarded LCCYSA primary physical custody of Child. Grandparents were awarded partial physical custody of Child on the first Monday and third weekend of every month. The trial court's order also detailed a custody schedule for holidays and summer vacation. Grandparents timely filed a notice of appeal and a concise statement of errors complained of on appeal.

Grandparents now raise the following issues for our review:

I.  WHETHER THE COURT GAVE ADEQUATE CONSIDERATION TO THE PUBLIC POLICY INTERESTS OF PLACING CHILDREN WITH GRANDPARENTS OVER FOSTER PARENTS?

II. WHETHER THE COURT ERRED IN ITS DETERMINATION THAT A CHILD SHOULD BE KEPT IN THE FOSTER CARE SYSTEM WHERE A VIABLE FAMILY OPTION EXISTS?

III. DID THE COURT ERR BY ANALYZING THE BEST INTEREST FACTORS OF 23 PA.C.S.A. [§] 5328 BY UTILIZING A COMPARISON OF THE PLAINTIFFS, GRANDPARENTS, VERSUS THE FOSTER PARENTS WHO HAVE NO STANDING IN THIS CUSTODY ACTION?

IV. WHETHER THE COURT ERRED IN ITS DETERMINATION THAT A FOSTER FAMILY WAS THE MORE APPROPRIATE CHOICE WHEN THE TESTIMONEY EVIDENCED THE FOSTER PARENTS WISHED TO SEVER TIES WITH THE CHILD'S MATERNAL EXTENDED FAMILY?

V.  WHETHER THE COURT ERRED IN THAT IT RELIED ON ONLY THE RELATIONSHIP BETWEEN THE CHILD AND ONE HALF-SIBLING WITHOUT ADEQUATE CONSIDERATION FOR THE CHILD'S RELATIONSHIP WITH HER OTHER HALF-SIBLINGS

> AND THE POSSIBILITY THAT HER HALF-SIBLING COULD BE REMOVED FROM THE FOSTER PARENTS' HOME IF HIS MOTHER COMPLETES HER PLAN WITH THE LANCASTER COUNTY CHILDREN AND YOUTH SOCIAL SERVICE AGENCY?
>
> VI. WHETHER THE COURT ERRED IN ITS DETERMINATION THAT THE EMOTIONAL NEEDS OF THE CHILD WOULD BE BEST SERVED BY DISRUPTING THE LIFELONG BOND SHE HAS SHARED WITH GRANDPARENTS?

Grandparents' Brief, at 6-7 (suggested answers omitted).

We address Grandparents' claim mindful of our well-settled standard of review:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

The Child Custody Act (the "Custody Act"), 23 Pa.C.S.A. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *See E.D. v. M.P.*, 33 A.3d 73, 77 (Pa. Super. 2011). "The primary concern in any custody case is the best interests of the child." *J.P. v. S.P.*, 991 A.2d 904, 907 (Pa. Super. 2010). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the

child's physical, intellectual, moral and spiritual wellbeing." *Id*. (citations omitted).

In awarding custody, the Custody Act requires a trial court to determine the best interests of the child after considering all relevant factors, including certain statutory factors. *See* 23 Pa.C.S.A. § 5328(a)(1)-(6).

We have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal. . . .

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (some citations and internal quotation marks omitted).

Grandparents' first five issues are related, and therefore we will address them together. The essence of Grandparents' argument is that the trial court erred in awarding primary physical custody to LCCYSA when a "viable family option exists." Grandparents' Brief, at 19. Grandparents contend that the legislature has articulated a public policy interest of keeping children with their biological families. In support, Grandparents cite the provisions of the Custody Act that enumerate custody rights for grandparents. They assert that because

the legislature has specifically created custodial rights for grandparents, they are "given an elevated status which other familial relationships including aunts, uncles, and other blood relationships are not afforded." *Id*.

Likewise, Grandparents also assert trial court error with respect to the weight the trial court placed "on the Foster Parents' [sic] themselves, specifically the make up of their household and the fact that they are related to the child by blood/marriage. . . ." *Id*., at 23. Grandparents believe that they are better suited to help Child maintain relationships with her half-siblings (namely, T.M. and B.M.) and that their thirty-five year marriage, as opposed to Foster Parents' three year marriage, will provide Child with the stability she so desperately needs.

The trial court issued its decision on October 10, 2017, with consideration of the § 5328(a) best interest factors. *See* Findings in Respect to Custody, 10/10/17, at 8-21. Ultimately, the trial court concluded that Child's best interest would be served by awarding LCCYSA primary physical custody of Child. In discussing the factors, the trial court concluded that Grandparents and LCCYSA, by and through Foster Parents, were equally capable of providing for Child and that Child is "integrated into a loving home replete with qualified parents who are also filled with love and concern for the Child." *Id*., at 19. However, the court expressed great concern that Grandparents will permit Child to have contact with Mother and Father, despite the court's order prohibiting such contact. The trial court stated:

- 7 -

> The Agency has lingering concerns that the Maternal Grandparents will permit the Child to have contact with Mother and/or Father. There is a basis for such concerns, in that Maternal Grandmother sent drawings created by the Child to Mother in prison, Maternal Grandparents maintained almost daily contact by telephone with Father while he was in prison, and both Mother and Father have expressed a preference that the Child be placed in the custody of Maternal Grandparents – a preference which reportedly has gone as far as executing consents to adoption in favor of the Maternal Grandparents. While both the Maternal Grandparents acknowledged in [c]ourt that they are willing to abide by an order directing that there be no contact between the Child and Mother or Father, the [c]ourt recognizes that it is difficult for the Maternal Grandparents to accept that such contact in reality places the Child at risk for emotional harm.

*Id*., at 11.

The trial court is required to give "weighted consideration to those factors which affect the safety of the child," pursuant to § 5328(a). We have also acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Critically, as we stated in *M.J.M.*: "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (citation omitted).

At their core, we interpret Grandparents' claims as disputes with the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Grandparents essentially question the trial court's conclusions and assessments, and invite this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to their view of the evidence. That is not our role. Under the aforementioned standard of review applicable in custody

- 8 -

matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence may not be disturbed absent an abuse of discretion. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012); *E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . .
>
> *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted).

Likewise, to the extent Grandparents claim that because they are Child's grandparents they should have been afforded the presumption of custody, Grandparents are mistaken. The Custody Act mandates that "[i]n any action regarding the custody of the child between a nonparent and another nonparent, there shall be no presumption that custody should be awarded to a particular party." 23 Pa.C.S.A. § 5327(c).

And to the extent that Grandparents claim that their status as Child's grandparents should have been the controlling consideration in determining custody, Grandparents are again mistaken. "When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.C. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). Indeed, in custody disputes, trial courts are statutorily required to consider the sixteen factors set forth in the best-interest test when determining the child's best interests. *See* 23 Pa.C.S.A. § 5328(a) ("In ordering any form of custody, the court shall

determine the best interests of the child by considering all relevant factors. . . .”); **A.V.**, 87 A.3d at 821. Therefore, Grandparents' claim that their status as grandparents trumped the best interests of Child lacks merit.

Here, the trial court exhaustively analyzed and addressed each factor under § 5328(a). **See** Findings in Respect to Custody, 10/10/17, at 2-21. Its findings and determinations regarding the custody factors are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **E.R.**, 129 A.3d at 527. To the extent Grandparents challenge the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As mentioned, the amount of weight that a trial court gives to any one factor is within its discretion. **See M.J.M.**, 63 A.3d at 339.

Last, we address Grandparents' complaint that the trial court's award was in error as it was made without the benefit of expert testimony “regarding the trauma to the child of being removed from a family household.” Grandparents' Brief, at 30. Grandparents argue the court failed to consider the possible effects of transferring custody from “Foster Parents' home or removing the significant visitation rights of [Grandparents] . . . .” **Id**. In support, Grandparents cite **E.A.L. v. L.J.W.**, 662 A.2d 1109, 1119 (Pa. Super. 1995). That case is inapposite. We decided **E.A.L.** before the enactment of the § 5328(a) custody factors, and therefore our decision there is of limited value here. Further, while **E.A.L.** instructs that courts should “fully discuss” the effects that transferring custody may have on a child, this Court has more

- 10 -

recently explained that no particular amount of detail is required when discussing the § 5328(a) factors. **See A.V.**, 87 A.3d at 823.

Regardless, even applying **E.A.L.** here, solely for the sake of argument, the trial court's discussion of the effect a change in custody might have on Child was more than sufficient. The court carefully examined the evidence before it and considered the impact that the parties' proposed custody schedules would have on Child before entering the final custody order. In particular, the court stated as follows:

> The [c]ourt cannot know what the Child's life experience was like prior to her placement shortly before her second birthday. What is known is that another child in her home suffered horrible abuse and that abuse has caused an end to life as the Child knew it. The upheaval associated with the sudden removal from a life setting (whatever the quality of that setting) is inevitably traumatic for a child. The [c]ourt cannot bring itself to subject the Child to the loss and trauma of again being removed from the comfort and consistency of her family – in this case the family into which she has been lovingly integrated over the past eleven months. The testimony compels a finding that the Child has formed a healthy and loving bond with the Foster Parents and with [Foster Parents' child]. There is no compelling reason to destroy those bonds, especially as the Foster Parents recognize and support the role that the Maternal Grandparents can, and should continue, to fulfill – that of loving grandparents who are essential participants in the process of raising the Child into a happy, well-adjusted, productive adult.

Findings in Respect to Custody, 10/10/17, at 19-20. Thus, **E.A.L.** affords no basis on which to disturb the custody order.

Order affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/05/2018