J-A08041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.T.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.T.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1157 WDA 2021 |

Appeal from the Decree Entered July 2, 2021
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
O.A. No. 5 of 2021

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: OCTOBER 28, 2022**

J.T.M (Father) appeals from the July 2, 2021 decree involuntarily terminating his parental rights to his daughter, J.T.M. (Child), born in May 2007.  In addition, Father's court-appointed counsel, Dennis W. McCurdy, Esquire (Counsel), has filed a petition to withdraw and accompanying amended brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we grant the petition to withdraw and affirm the termination decree.

We begin with an overview of the relevant facts and procedural history. This appeal arises from the petition filed by T.K.B. (Mother) on January 27, 2021, for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  Mother's husband, D.I.B. (Stepfather), filed a petition for adoption on the same date.  The orphans' court scheduled

the evidentiary hearing for July 1, 2021, and it appointed Carrie S. O'Connell, Esquire, as counsel for Child pursuant to 23 Pa.C.S. § 2313(a).

On the date of the hearing, Father was incarcerated at State Correctional Institution (SCI) – Greene, where he was transferred on or about the date that Mother filed the involuntary termination petition.[1]  N.T., 7/1/21, at 3. Father did not appear at the evidentiary hearing, and no counsel appeared on his behalf.  Mother's counsel, Elizabeth A. Gribik, Esquire, introduced into the record, and the court admitted, proofs of service filed on April 21, 2021, and May 6, 2021.  *Id.* at 3-5.  The court concluded that Father "was served by mail" with the petition and the notice of hearing on April 21, 2021, and May 6, 2021.[2]  Orphans' Ct. Op., 9/27/21, at 1.  The court further found that Father, however, filed no documentation in the orphans' court to indicate that

---

[1] The court took judicial notice of Father's criminal record.  N.T. at 11.  Mother testified that Father is incarcerated for a parole violation involving burglary and crimes involving possession and intent to deliver illegal drugs.  *Id.*

[2] Attorney Gribik served Father on two separate occasions with the involuntary termination petition, the adoption petition, and a petition requesting *in forma pauperis* status and court-appointed counsel, *inter alia*.  She attached to the proofs of service **notifications of delivery** made by the United States Postal Service (USPS) on April 21, 2021, and May 6, 2021.  The record does not reveal whether Attorney Gribik served Father by registered or certified mail. *See* Pa.O.C.R. 15.4(a) (providing, in part, "Notice to every person to be notified shall be by personal service, service at his or her residence or an adult member of the household, or by registered or certified mail to his or her last known address.").

he contested Mother's petition, such as requesting court-appointed counsel or appearing at the hearing. *Id.* at 2.

During the hearing, Mother testified on her own behalf, and she presented the testimony of Stepfather. Additionally, Child, who was 14 years old at the time of the hearing, testified in open court that she preferred Father's parental rights be terminated so that Stepfather can adopt her.

Mother and Father have three natural daughters, and Child is the oldest. *See* N.T. at 7. Mother previously filed petitions for the involuntary termination of Father's parental rights to his two other natural daughters, which the court granted on December 10, 2020. *Id.* at 7, 38-39. At that time, Child did not consent to Stepfather adopting her, so Mother did not file a petition regarding Father's parental rights to Child.[3] *Id.* at 7-8.

Mother testified that Father was regularly involved in Child's life until she was five years old. *See* N.T. at 8. Thereafter, Father was rarely involved, and he did not perform any parental duties for Child. *Id.* at 8-10; 11-13. As related *supra,* Father has spent time in jail on various occasions and he was incarcerated at the time of the hearing. *Id.* at 8-9. Furthermore, Father last saw Child during a supervised visit at Family Pathways in September 2020.

---

[3] The record reveals that Stepfather filed petitions to adopt Child's sisters, but an adoption hearing had not yet occurred. At the conclusion of the subject proceeding, the court terminated Father's parental rights to Child, and directed that the adoption hearing, when scheduled, include Child and her two sisters. N.T. at 39-40.

*Id.* Child terminated the visit early because she hoped Father would turn his life around, and it was evident that he had not. *Id.* at 31-32. Child shares a bond with Stepfather, who has been involved in her life since 2017. *Id.* at 13-14, 21-24. Child made a conscientious decision that she wants Father's parental rights terminated and that she wishes to be adopted by Stepfather. *Id.* at 31-34.

At the conclusion of the proceeding, the orphans' court terminated Father's parental rights on the record in open court pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). *See* N.T. at 37-38. By decree dated July 1, 2021, the court involuntarily terminated Father's parental rights to Child. An affidavit of service related to the decree was filed on the court's docket on July 2, 2021, and a proof of service was filed on July 12, 2021.

Father, acting *pro se*, timely filed a notice of appeal on August 6, 2021.[4] However, Father failed to file a concise statement of errors complained of on

---

[4] We treat Father's appeal as being timely filed because the decree was not entered on the orphans' court docket with the required notation that notice had been given to Father. Pa.O.C.R. 4.6; Pa.R.A.P. 903(a). This constituted a breakdown in court operations, which resulted in the 30-day appeal period not being triggered. *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999); *Carr v. Michuck*, 234 A.3d 797 (Pa. Super. 2020).

Specifically, on July 2, 2021, the orphans' court clerk recorded on the docket, "ADOPT – AFFD OF SERVICE (INVOL) TERM ORDER, FINDINGS, CONCLUSIONS & NOTICE OF RCP 236 COMPLIANCE." On July 12, 2021, the clerk recorded on the docket, "PROOF OF SERVICE FILED." However, neither docket entry includes the date that the clerk provided written notice to Father. *See Carr*, 234 A.3d at 805-806; *see also* Pa.O.C.R. 4.6. Indeed, attached

appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). **See In Re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis).

Pursuant to Father's request, by order dated September 28, 2021, the orphans' court appointed counsel, Nicole Thurner, Esquire, for Father. In the same order, the court directed Attorney Thurner to file a concise statement within 30 days. **See** Order, 9/28/2021, at ¶ 3. Attorney Thurner failed to comply. **See J.P. v. S.P.**, 991 A.2d 904, 908 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

By order issued on November 12, 2021, this Court remanded the case to the orphans' court to determine whether Attorney Thurner had abandoned Father and, if necessary, appoint new counsel, and to file, on or before November 22, 2021, written findings with the Prothonotary's Office of this Court. **See** Order, 11/12/2021. In addition, we directed that, if the court

---

to the proof of service included in the certified record is a USPS tracking slip indicating that Father was served with the decree and notice of right to appeal, *inter alia*, on July 8, 2021. As such, we will "regard as done which ought to have been done" and deem this *pro se* appeal as timely filed, *i.e.*, treat this appeal as if the clerk inscribed the notation required by Rule 4.6. **Commonwealth v. Carter**, 122 A.3d 388, 391 (Pa. Super. 2015).

finds Attorney Thurner has not abandoned Father, then it shall include, "in its notice of findings, the date certain that counsel will file [Father's] concise statement of errors complained of on appeal." *Id.*

The orphans' court complied with the November 12th order. Following a status conference with Attorney Thurner and Attorneys O'Connell and Gribik, the court found that Attorney Thurner had not abandoned Father. Further, the court determined that, on November 19, 2021, Attorney Thurner filed a statement of intent to withdraw in lieu of filing a concise statement pursuant to Pa.R.A.P. 1925(c)(4).[5] *See In re J.T.*, 983 A.2d 771, 774 (Pa. Super.

---

[5] Rule 1925 provides, in relevant part:

(c) Remand.

\* \* \*

(4) If counsel intends to seek to withdraw in a criminal case pursuant to *Anders/Santiago* or if counsel intends to seek to withdraw in a post-conviction relief appeal pursuant to *Turner/Finley*, counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a Statement. If the appellate court believes there are arguably meritorious issues for review, those issues will not be waived; instead, the appellate court shall remand for the filing and service of a Statement pursuant to Pa.R.A.P. 1925(b), a supplemental opinion pursuant to Pa.R.A.P. 1925(a), or both. Upon remand, the trial court may, but is not required to, replace an appellant's counsel.

Pa.R.A.P. 1925(c)(4).

2009) (holding that decision of counsel to follow Pa.R.A.P. 1925(c)(4) procedure in a termination of parental rights case was proper).

Counsel thereafter filed a petition to withdraw and **Anders** brief in this Court.[6] On May 24, 2022, this Court denied Attorney Thurner's petition and directed her to comply with **Santiago**, 978 A.2d at 771 and **Anders**, 386 U.S. at 738, or file an advocate's brief within thirty days from the date of the decision. **See In Re Adoption of J.T.M.**, 1157 WDA 2021 (Pa. Super. May 24, 2022) (unpub. memo.). Attorney Thurner failed to comply. Accordingly, this Court entered another order on July 18, 2022, mandating that Attorney Thurner file a brief within ten days of that order. **See** Order, 7/18/2022. Attorney Thurner failed to comply with that order as well.[7]

On August 9, 2022, this Court remanded the matter to the orphans' court to remove Attorney Thurner as counsel and to appoint new counsel for Father.[8] This Court directed newly appointed counsel to file a brief within 30 days from the date of appointment. The orphans' court removed Attorney

---

[6] Counsel revealed that she represented Father in the involuntary termination proceeding concerning his two other daughters, Child's younger sisters, discussed above. **See Anders** Brief, 1/14/2022, at 10 n.1.

[7] Attorney Thurner did not communicate to this Court that she had any issues complying with the May 24, 2022 order, or the subsequent July 18, 2022 order. Her conduct has caused a substantial and needless delay in resolving this appeal.

[8] This Court also ordered Attorney Thurner to return any fees she received in connection with representation of this matter to the orphans' court.

Thurner as the attorney of record for Father on September 6, 2022, and appointed Counsel to represent Father in the instant appeal. Thereafter, on September 26, 2022, Counsel filed a petition to withdraw and **Anders** brief in this Court, which we address first.

This Court has explained:

When counsel files an **Anders** brief, this Court may not review the merits without first addressing counsel's request to withdraw. [T]his Court [has] extended the **Anders** principles to appeals involving the termination of parental rights. . . .

**In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014) (citations omitted).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

In **Santiago**, our Supreme Court held:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.3d at 361. Additionally, this Court has stated that,

- 8 -

> [P]ursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and its progeny, "[c]ounsel also must provide a copy of the **Anders** brief to his client[, along with] a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief."

**In re X.J.**, 105 A.3d at 4 (citation omitted). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d at 752.

Finally, "[o]nce counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **In re X.J.**, 105 A.3d at 4 (citations omitted).

Instantly, Counsel filed a petition to withdraw certifying his conscientious review and determination that Father's appeal is frivolous. Counsel also filed an amended **Anders** brief which includes a summary of the procedural history and facts of the case with citations to the record, that no issues arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition the letter that he sent to Father advising of his right to 1) retain new counsel to pursue the appeal; 2) proceed pro se on appeal; or 3) raise any points that Father deems worthy of this Court's

- 9 -

attention. Accordingly, Counsel complied with the requirements of **Anders** and **Santiago**.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

We note the standard of review in termination of parental rights cases:

> [A]ppellate courts . . . accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re J.N.M.**, 177 A.3d 937, 941-42 (Pa. Super. 2018) (citation omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights and requires a bifurcated analysis. **See** 23 Pa.C.S. § 2511.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re J.N.M.,* 177 A.3d at 942 (citation omitted). In order to affirm a termination of parental rights, we need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the matter at bar, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). Here, we analyze the court's decision to terminate pursuant to Sections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \*
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

To satisfy the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for their abandonment of the child, in addition to any post-abandonment contact. *Id.* This Court has emphasized that a parent does not perform parental duties by displaying "a merely passive interest in the development of [a] child." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . .

*Id.* (citations omitted).

Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. Super. 2018) (discussing *In re Adoption of McCray,* 331 A.2d 652 (Pa. 1975)).

With respect to Section 2511(b), we consider whether termination of parental rights will best serve children's developmental, physical and emotional needs and welfare. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* "[A] parent's basic constitutional right to the custody and rearing of. . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

"When conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." *In re Z.P.*, 994 A.2d at 1121. "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). "'Above all else . . . adequate consideration must be given to the needs and welfare of the child.' A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121.

In the instant case, the orphans' court stated, "the evidence presented demonstrates [Father] failed to perform parental duties for at least six (6)

months preceding filing of the [p]etition on January 27, 2021." Orphans' Ct.

Op. at 6. The court continued,

> In making its determination, the [c]ourt considered the circumstances regarding [Father's] incarceration. There was no evidence presented that [Father] sent letters or cards to [Child], while incarcerated. Upon release, [Father] was granted the opportunity to reunify with [Child]. [Father] attended only one (1) court-ordered reunification counseling session at Family Pathways. While the session occurred within six (6) months of filing the [p]etition, a single supervised visit is not a "continuing interest in the child and a genuine effort to maintain communication and association with the child." *See In re C.M.S.*, 832 A.2d [457, 457 (Pa. Super. 2003)]. [Father] failed to perform parental duties when he was not incarcerated. Therefore, [Father's] incarceration does not preclude termination of his parental rights.

*Id.* at 7.

A careful review of the record supports the orphans' court's finding. At the time of the hearing, Child was 14 years old. Mother testified that Father has not participated in Child's life since she was five years old. *See* N.T. at 8. He does not attend any of her extracurricular activities; he does not help with homework; he does not attend any of Child's school functions; and he does not provide any financial support for Child. *Id.* at 12. Additionally, Father has Mother's contact information, but he does not reach out asking to speak with Child or to see how Child is doing. *Id.* at 12-13. Father's last visit with Child occurred in September 2020, and the visit ended early because it was too difficult for Child. *Id.* at 10, 31-32. Father has been incarcerated during various periods of Child's life, and the record does not indicate that he has made efforts to perform parental duties whether incarcerated or not.

Based on the foregoing, we discern no abuse of discretion by the orphans' court in concluding that Father's conduct warrants termination pursuant to Section 2511(a)(1). The record demonstrates that for a period of far in excess of six months immediately preceding the filing of the petition, Father refused or failed to perform parental duties.

We turn now to Section 2511(b). The orphans' court aptly stated:

> [I]t is in [Child's] best interest to terminate [Father's] parental rights. [Child] testified she still feels a connection with [Father], but not a bond like she feels with Mother and [Stepfather]. [Child's] decision in favor of terminating [Father's] parental rights is mature and well-reasoned. The record is void of any evidence a bond exists between [Father] and [Child], who will be able to maintain connection with the paternal family through [p]aternal [g]randmother. On the other hand, the credible evidence established [Child] and [Stepfather] are bonded and enjoy a loving father-daughter relationship.

Orphans' Ct. Op. at 7-8. The court also stated that Mother and Stepfather provide a stable family unit and provide for the needs and welfare of Child. *Id.* at 8.

The record confirms the orphans' court's findings. Child's counsel, with permission from Child in open court to give a statement on her behalf, stated that Child feels a connection with Father, but not a bond. N.T. at 31. Child initially hoped that Father would turn his life around, but ultimately Child made her decision to terminate his rights knowingly, intelligently, and voluntarily. *Id.* at 31, 35.

Furthermore, Mother and Stepfather testified to the significant bond that Child and Stepfather have cultivated. Mother testified that Child and

- 15 -

Stepfather are "very much alike" and have "father/daughter" nights on Monday nights. *Id.* at 13. Stepfather confirmed that he and Child are alike and that he loves Child. *Id.* at 21-22. Stepfather also testified that he takes time each week to spend quality time with Child. *Id.* at 24. Accordingly, the orphans' court did not abuse its discretion in determining that termination best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Our independent review of the certified record reveals no preserved non-frivolous issue that would arguably support this appeal from the decree. *See In re X.J.*, 105 A.3d at 4. Therefore, we grant Counsel's petition to withdraw from representation, and affirm the decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Counsel's petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2022

- 16 -